# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

JILL C.,[1]

        Plaintiff,

    v.

**NANCY A. BERRYHILL**, Deputy
Commissioner for Operations, performing the
duties and functions not reserved to the
Commissioner of Social Security,

        Defendant.

Case No. 3:17-cv-01892

**OPINION AND ORDER**

George J. Wall, 1336 E. Burnside St., Suite 130, Portland, OR 97214. Of Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Renata Gowie, Assistant United States Attorney,
UNITED STATES ATTORNEY'S OFFICE, District of Oregon, 1000 SW Third Ave., Suite 600,
Portland, OR 97204-2902; Alexis L. Toma, Special Assistant United States Attorney, OFFICE OF
THE GENERAL COUNSEL, Social Security Administration, 701 Fifth Ave., Suite 2900 M/S 221A,
Seattle, WA 98104-7075. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

      Plaintiff seeks judicial review of the final decision of the Commissioner of the Social

Security Administration ("Commissioner") denying Plaintiff's application for Social Security

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last
name of the non-governmental party or parties in this case. Where applicable, this opinion uses
the same designation for a non-governmental party's immediate family member.

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the following reasons, the Commissioner's decision is AFFIRMED.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quoting *Andrews*, 53 F.3d at 1039).

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quotation marks omitted)). A reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

# BACKGROUND

## A. Plaintiff's Application

Plaintiff, Jill C., filed an application for DIB and SSI on February 6, 2014, alleging disability beginning on July 15, 2012. AR 19, 66-67, 192-201. She was 41 years old at the alleged disability onset date and is currently 48 years old. Plaintiff alleged disability due to a seizure disorder, memory loss, degenerative arthritis, left shoulder pain, depression, anxiety, panic disorder, and bipolar disorder. AR 66-67. The Commissioner denied Plaintiff's application initially and upon reconsideration. AR 82, 148. After these decisions, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 155-57. On May 27, 2016, ALJ S. Andrew Grace found Plaintiff not disabled. AR 16-18. Plaintiff appealed the ALJ's decision to the Appeals Council. The Appeals Council denied the request for review, making the ALJ's decision the final decision of the Commissioner. AR 1-4. Plaintiff seeks judicial review of that decision.

## B. The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 C.F.R. §§ 404.1520 (DIB), 416.920 (SSI); *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510, 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or combination of impairments is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). Unless expected to result in death, this impairment must have lasted or be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509, 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis continues. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v), 404.1560(c), 416.960(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

## C. The ALJ's Decision

The ALJ found that Plaintiff met the insured requirements of the Social Security Act for purposes of DIB, with a date last insured of December 31, 2018. The ALJ then applied the sequential analysis. At step one, the ALJ determined that Plaintiff may have engaged in substantial gainful activity for a period in 2012 and 2013 while working for Marshalls retail store, but the dates of employment were unclear. The ALJ found that Plaintiff has not engaged in any other substantial gainful activity since the alleged onset date, July 15, 2012. AR 21.

At step two, the ALJ found that Plaintiff has the following severe impairments: major depressive disorder, cognitive disorder, anxiety disorder, personality disorder not otherwise specified, posttraumatic stress disorder ("PTSD"), seizure disorder, degenerative illness of the knees, and post left shoulder dislocation with calcific tendonitis. *Id.* At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or equals one

of the specific impairments listed in the regulations. AR 22. The ALJ determined that Plaintiff

has the RFC to perform sedentary work, except that she should avoid concentrated exposure to

hazards. AR 23. The ALJ also included the following limitations in Plaintiff's RFC: she can

occasionally climb, use foot controls, and reach overhead; she can never climb ladders or

scaffolds; she is limited to simple, routine tasks and low-stress work; she is limited to occasional

contact with the public and coworkers; and, she can perform work at an ordinary pace but not a

production rate pace. AR 23-24.

At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.

Finally, at step five, the ALJ determined that there are jobs that exist in significant numbers in

the national economy that Plaintiff can perform. AR 30. Based on the testimony of a vocational

expert, the ALJ found that Plaintiff is capable of performing the requirements of representative

occupations such as an electronics worker or semi-conductor worker. For these reasons, the ALJ

concluded that Plaintiff is not disabled.

## DISCUSSION

Plaintiff argues that the ALJ erred by: (A) improperly discounting Plaintiff's subjective

symptom testimony based on non-compliance with treatment; and (B) improperly weighing the

opinions of treating physicians and mental health providers. The Court addresses each

assignment of error in turn.

## A.  Plaintiff's Subjective Symptom Testimony

The ALJ found that Plaintiff's medically determinable impairments could reasonably be

expected to cause some of the alleged symptoms, but Plaintiff's statements regarding the

intensity, persistence, and limiting effects of the symptoms were not entirely consistent with the

evidence in the record for several reasons, including Plaintiff's lack of compliance with

treatment. Plaintiff contends that her non-compliance was justifiable and excusable because of

difficulty affording treatment and memory issues. Plaintiff argues that the ALJ erred by failing properly to consider Plaintiff's memory difficulties when evaluating her non-compliance with treatment.

### 1. Standards for Evaluating Symptom Testimony

If there is no evidence of malingering, "the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir. 1996). It is "not sufficient for the ALJ to make only general findings; he must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345-46 (9th Cir. 1991) (en banc).

Effective March 16, 2016, the Commissioner superseded Social Security Rule ("SSR") 96-7p governing the assessment of a claimant's "credibility" and replaced it with a new rule, SSR 16-3p. *See* SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates the reference to "credibility," clarifies that "subjective symptom evaluation is not an examination of an individual's character," and requires the ALJ to consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. *Id.* at *1-2. The Commissioner recommends that the ALJ examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. The Commissioner recommends assessing: (1) the claimant's statements made to the Commissioner, medical

providers, and others regarding the claimant's location, frequency and duration of symptoms, the impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *6-7. The ALJ's opinion was issued on May 27, 2016, and thus is governed SSR by 16-3p.

### 2. The ALJ's Analysis

Plaintiff alleges several physical and mental symptoms that limit her ability to work. Plaintiff claims that she cannot work because she has anxiety, trouble focusing, and memory problems. Plaintiff also experiences tonic-clonic seizures. During seizures, Plaintiff has become incontinent, dislocated her shoulder, and bitten her cheek. Plaintiff becomes disoriented and combative after she experiences a seizure. She alleges that it took two weeks to return to normal after her last seizure. Plaintiff takes seizure medications to combat the onset of seizures, but the medications must be taken regularly to be effective. According to Plaintiff, issues related to homelessness and memory difficulties prevent her from consistently taking the medications. Plaintiff also claims that her memory difficulties are exacerbated by the fact that she has borderline intellectual functioning. AR 24.

An ALJ may rely on a claimant's non-compliance with treatment to discount her testimony regarding the intensity or persistence of symptoms. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). If a claimant offers a good reason for non-compliance with treatment, however, then the non-compliance is not a clear and convincing reason to discredit a

claimant's testimony. *See Smolen*, 80 F.3d at 1285. Non-compliance is excusable when a disabled claimant cannot afford the treatment. *Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006); *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995) ("We certainly agree with other circuits that a disabled claimant cannot be denied benefits for failing to obtain medical treatment that would ameliorate his condition if he cannot afford that treatment."). The Ninth Circuit also disfavors faulting a claimant for failing to comply with treatment when a mental impairment causes the non-compliance. *See Regennitter v. Commissioner of Social Sec. Admin.*, 166 F.3d 1294, 1299-1300 (9th Cir. 1999); *see also Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) (". . . it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.").

For the symptoms related to Plaintiff's seizures, the ALJ determined that the evidence supports limitations on climbing, exposure to hazards, and lifting, but no other restrictions because the seizure disorder seems to be controlled by medication. Plaintiff's symptom testimony was found to be inconsistent with the medical record because Plaintiff was non-compliant with her medications. The ALJ attributed some of Plaintiff's compliance issues to homelessness but concluded that Plaintiff had "been offered extensive assistance with improving her compliance and she has not followed through." AR 26.

### 3. Plaintiff's Reasons for Non-Compliance

As an initial matter, the Court finds that a claimant can put forth multiple reasons for justifiable non-compliance. Defendant protests that Plaintiff offers alternative and contradictory reasons for non-compliance at different points in the record. For example, Defendant notes that within a single month Plaintiff claimed that she had trouble remembering whether she took medication and also that she stopped taking her medications due to housing issues. The Court does not find these reasons contradictory. Surely, a person may reasonably experience two

difficulties—housing issues and forgetfulness—within one month. The Court addresses each of Plaintiff's proffered reasons for non-compliance.

### a. Cost

Substantial evidence in the record supports Plaintiff's assertion that homelessness and the cost of treatment prevented her from consistently taking seizure medications. Plaintiff frequently reported to medical providers that cost hindered her access to medications. For example, in August 2012 Plaintiff was homeless and unemployed when she reported that she had "been out of Depakote for three days" and taking lower dosages "to make it last." AR 380-81. In January 2014, Plaintiff reported that she "fell on hard times" and went off her seizure medications due to cost. AR 332. In October 2015, Plaintiff reported that her homelessness was a barrier to taking her medications consistently. AR 627. In January 2016, Plaintiff failed to take medications consistently after she lost access to a homeless shelter. AR 894.

Defendant argues that the Plaintiff was volitionally noncompliant with medication because, as noted by the ALJ, Plaintiff once told a physician that she had no intention to resume medication. AR 332. The ALJ's opinion did not include, however, that Plaintiff stated that she would consider taking the medications again if they were available free of cost. *Id.* Additionally, the medical notes from that visit state that Plaintiff stopped taking the medications due to cost. *Id*. These findings support Plaintiff's argument that homelessness and the cost of treatment were barriers to consistent compliance with treatment.

### b. Memory

The medical records also support Plaintiff's assertion that memory and cognitive abilities have negatively affected her ability to comply with treatment. Plaintiff frequently cited memory issues when discussing compliance with medical providers. In 2012, Plaintiff reported "most days I can't remember if I took my meds." AR 305. In July 2014, Plaintiff stated that she had

been experiencing "memory problems" and trouble "thinking of the right words for months." AR 509. After having a seizure in February 2015, Plaintiff again reported to doctors that she "has trouble remembering whether she has or has not taken medication," AR 613, and a "very poor recent memory." AR 610.

Additionally, objective medical evidence in the record supports Plaintiff's alleged memory and cognitive difficulties. Dr. Lance Portnoff, Ph.D. conducted a comprehensive psychological evaluation that tested Plaintiff's cognitive and memory functions. As part of this evaluation, Plaintiff underwent intelligence testing and completed a "Wechsler Memory Scale" test that examines memory functioning. Dr. Portnoff found that Plaintiff has an IQ of 75 and his prognosis for Plaintiff's cognitive deficits was "poor." AR 491, 495. Dr. Portnoff also determined that Plaintiff has "deficits in verbal and visual reasoning, working memory, complex concentration, and in immediate/delayed visual/verbal memory." AR 495. Although the ALJ is not required to discuss every piece of evidence, he "must explain why significant probative evidence has been rejected." *Stark v. Shalala*, 886 F. Supp. 733, 735 (D. Or. 1995) (citing *Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)). Plaintiff's memory testing was significant, probative evidence, and the ALJ failed to evaluate or discredit these test results.

The only evidence in the ALJ's opinion that contradicts the objective medical test results regarding Plaintiff's memory issues was a treatment note from Dr. Charles Nicholson that stated that Plaintiff showed no "overt cognitive or memory impairment." AR 605. This note, however, did not result from any formal testing of Plaintiff's cognitive or memory functioning and merely reflected an observation of Plaintiff's apparent abilities. In *Trevizo v. Berryhill*, the Ninth Circuit determined that a plaintiff's claims of fatigue were not controverted by treatment notes that "generally show denials of fatigue" because the plaintiff was not required to be incapacitated by

fatigue at all times. 871 F.3d 664, 680 (9th Cir. 2017). The court found that the plaintiff reported fatigue at more than half of her appointments and held that "treatment records must be viewed in light of the overall diagnostic record." *Id.* (quoting *Ghanim v. Colvin*, 763 F.3d 1154, 1164 (9th Cir. 2014)). Similarly, the medical record shows that Plaintiff described her difficulty with memory at several medical appointments. *See* AR 305, 509, 613, 610. In addition, Plaintiff's alleged memory difficulties are supported by objective medical testing. The ALJ did not directly address Plaintiff's memory difficulties or explain why Dr. Portnoff's evaluation, which specifically tested memory, is less credible than a single treatment note describing Plaintiff's apparent memory quality.

Defendant argues that Plaintiff failed to prove that memory issues prevent her from taking medications because the record shows periods of months where Plaintiff did not report any seizures. According to Defendant, these periods indicate that Plaintiff was remembering to take her medications. There are two flaws with this reasoning. First, there is no evidence that suggests Plaintiff has a seizure every time that she misses a dose of medication. Thus, there may be instances where Plaintiff failed to remember to take her medications yet did not suffer a seizure. Second, even if the Court accepts that these seizure-free periods prove that Plaintiff was remembering to take medications, Plaintiff still experienced several seizures during the relevant time period. These seizures support Plaintiff's claim that she was unable consistently to take the medications.

Finally, even though the ALJ accepted that some of Plaintiff's compliance issues were "related to homelessness," the ALJ concluded that claimant failed to follow through with "extensive assistance" offered to improve compliance, citing a report from the Old Town Clinic. AR 26. This report, however, supports Plaintiff's arguments for non-compliance. The report

from Old Town Clinic states that homelessness and the struggle of "living in shelters and outside" triggered Plaintiff's difficulty adhering to her treatment plan. AR 903. The report also states that Plaintiff had not shown progress because she "has forgotten to take her [medications] at times." *Id.* These facts support Plaintiff's proffered reasons for justifiable non-compliance.

Plaintiff offered justifiable reasons for non-compliance that are supported by substantial evidence in the record. The ALJ did not specify clear and convincing evidence to dispute these assertions. The Court finds that the ALJ erred by using non-compliance to discredit Plaintiff's symptom testimony.

### 4. Alternative Bases for Discounting Subjective Symptoms

The Court does not end the analysis with non-compliance, however, because the ALJ provided other bases for discounting Plaintiff's subjective symptoms. The ALJ's credibility decision may be upheld overall even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The Court will not reverse the decision of the ALJ for an error in evaluating symptom testimony as long as there remains "substantial evidence supporting the ALJ's conclusions" and the error "does not negate the validity of the ALJ's conclusions" regarding symptom testimony. *Id.* at 1197.

The ALJ also provided the following additional reasons for discrediting Plaintiff's symptom testimony: (1) Plaintiff alleges disability beginning in 2012 but the treatment records prior to 2014 are "limited and infrequent;" (2) Plaintiff worked at times in 2012 and 2013; (3) Plaintiff left her last job due to a move, not due to her symptoms; (4) Plaintiff's claims regarding her difficulty with crowds were contradicted by her chosen distractions of "people-watching" on the light rail, visiting public squares, and going to the park to watch children play; (5) Plaintiff's pain complaints responded well to routine care; (6) even though Plaintiff reported mini-strokes, the CT scan of her head was normal; and (7) Plaintiff's mental

health care was generally routine and conservative. AR 26-27. Plaintiff did not challenge any of these reasons for discrediting her symptom testimony and thus waived the opportunity. Accordingly, these constitute valid reasons provided by the ALJ. The ALJ's reliance on Plaintiff's non-compliance with treatment is harmless error. *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1623 (9th Cir. 2008) (finding that the ALJ's reliance on invalid reasons was harmless error because the ALJ provided other valid reasons that support the ALJ's credibility determination).

## B. Medical Opinion Evidence

Plaintiff next argues that the ALJ improperly weighed the opinions of Plaintiff's treating physicians and mental health providers. The ALJ is responsible for resolving conflicts in the medical record, including conflicts among physicians' opinions. *Carmickle*, 533 F.3d at 1164. The Ninth Circuit distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). Generally, "a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2011). If a treating physician's opinion is supported by medically acceptable techniques and is not inconsistent with other substantial evidence in the record, the treating physician's opinion is given controlling weight. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2). A treating doctor's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

Only "acceptable medical sources" may be considered treating physicians and accorded great or controlling weight. *See* 20 C.F.R. § 416.927(a)(2). SSR 06-03p, in effect at the time Plaintiff filed her claim, defined "acceptable medical sources" as licensed physicians, licensed or

certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech pathologists.[2] SSR 06-03p, available at 2006 WL at 2329939 (Aug. 9, 2006). Health care providers who are not "acceptable medical sources," such as "nurse practitioners, physician's assistants, chiropractors, audiologists, and therapists," are still considered "medical sources" under the regulations, and the ALJ can use these other medical source opinions in determining the "severity of [the individual's] impairment(s) and how it affects [the individual's] ability to work." 20 C.F.R. § 404.1513(d). An "other" medical source may not, however, provide medical opinions or be given "controlling" weight as a treating medical source. *See* SSR 06-03p.

An ALJ may not reject the competent testimony of "other" medical sources without comment. *Stout v. Comm'r of Soc. Sec.*, 454 F.3d 1050, 1053 (9th Cir. 2006). To reject the competent testimony of "other" medical sources, the ALJ need only give "reasons germane to each witness for doing so." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting *Turner v. Comm'r of Soc. Sec.*, 613 F.3d 1217, 1224 (9th Cir. 2010)). In rejecting such testimony, the ALJ need not "discuss every witness's testimony on an individualized, witness-by-witness basis. Rather, if the ALJ gives germane reasons for rejecting testimony by one witness, the ALJ need only point to those reasons when rejecting similar testimony by a different witness." *Id.* at 1114. The ALJ also may "draw inferences logically flowing from the evidence." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

---

[2] For claims filed on or after March 27, 2017, the Commissioner has rescinded SSR-06-03p, broadened the definition of acceptable medical sources to include Advanced Practice Registered Nurses (such as nurse practitioners), audiologists, and physician assistants for impairments within their licensed scope of practice, and clarified that all medical sources, not just acceptable medical sources, can provide evidence that will be considered medial opinions. *See* 20 C.F.R. §§ 404.1502, 416.902; 82 Fed. Reg. 5844, 5132, 15263.

### 1. Nurse Heenan and Dr. Susteric

The ALJ accorded partial weight to the physical capacity assessment completed by Anne Heenan, FNP ("Nurse Heenan"), a treating nurse practitioner, and cosigned by Dr. Brianna Susteric, MD ("Dr. Susteric"). Plaintiff contends that the ALJ improperly weighed the opinions of Nurse Heenan and Dr. Susteric because both qualify as uncontroverted "acceptable medical sources." Thus, according to Plaintiff, the ALJ must provide clear and convincing reasons to reject the opinions, and the reasons listed by the ALJ fail to meet this standard. Defendant responds that Nurse Heenan does not qualify as an "accepted medical source" and there is no evidence that Dr. Susteric treated Plaintiff. Therefore, Defendant argues, the ALJ may reject the opinion for reasons "germane" to the opinion.

### a. Acceptable or Other Medical Source Opinion

The opinion of a nurse practitioner usually qualifies as an "other" medical source, but may be considered an "acceptable medical source" if the nurse practitioner works under the close supervision of a physician. *See Gomez v. Chater*, 74 F.3d 967, 971 (9th Cir. 1996); *see also Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1234 (9th Cir. 2011). In *Gomez*, the Ninth Circuit determined that a nurse practitioner's opinion may be considered an "acceptable medical source" when the nurse practitioner works under the supervision of a physician, conferred frequently with the physician, and acted as an agent of the physician in treating the patient. *Gomez*, 74 F.3d at 971. To support this conclusion, the court relied on 20 C.F.R. § 416.913(a)(6), which states that a "report of an interdisciplinary team that contains the evaluation and signature of an acceptable medical source is also considered acceptable medical evidence." *Id.* A few years later, the Social Security Administration repealed 20 C.F.R. § 416.913(a)(6), stating that "it is redundant and somewhat misleading to provide that an interdisciplinary team report containing

the evaluation and signature of an acceptable source is such a source." 65 Fed. Reg. 34950-01, 34953 (July 3, 2000).

Defendant argues that the exception for "acceptable medical sources" found in *Gomez* is no longer applicable law because the court relied on § 416.913(a)(6) and that regulation has since been repealed. Defendant is correct that the Ninth Circuit has recognized that *Gomez* relied on the repealed regulation, but the court also noted that *Gomez* only "relied in part" on that regulation. *See Molina*, 674 F.3d at 1111. The Ninth Circuit has not explicitly addressed the effect of the repeal of § 416.913(a)(6) on *Gomez* or the "continued vitality" of the exception. *Id.* at 1111 n.3; *see also Britton v. Colvin*, 787 F.3d 1011, 1013 n.4 (9th Cir. 2015) (stating *Gomez* partially relied on the repealed regulation but expressing no view on *Gomez*'s validity). The Ninth Circuit has, however, continued to cite *Gomez* and apply the exception to the "acceptable medical sources" definition long after the repeal of § 416.913(a)(6). *See Taylor*, 659 F.3d at 1234 (citing *Gomez*, 74 F.3d at 971) (stating that the opinion of a nurse practitioner who works closely under the supervision of a physician may be considered that of an "acceptable medical source" eleven years after the repeal of § 416.913(a)(6)). Thus, *Gomez* continues to "set forth the law of the Ninth Circuit." *See Hale v. Berryhill*, 2018 WL 2221675 (D. Or. May 15, 2018).

Even when applying the exception from *Gomez*, however, the facts in the record do not establish that Nurse Heenan acted as an agent of an "acceptable medical source" as described in *Gomez*. Nurse Heenan filled out and signed the physical capacity statement on January 14, 2016, but Dr. Susteric did not sign the statement until three months later on April 4, 2016. AR 935. Nurse Heenan treated Plaintiff several times in 2015 and 2016, *see, e.g.*, AR 746, 756, 759, 894, 960, 965, and multiple medical documents list Nurse Heenan as Plaintiff's primary care provider. *See, e.g.*, AR 751, 753, 767, 779. Dr. Susteric's name, on the other hand, appears only on the

physical capacity statement that she cosigned with Nurse Heenan. AR 935. There is no evidence

in the treatment record of conferrals between Nurse Heenan and Dr. Susteric, Dr. Susteric's

presence at any examinations, or any other evidence that suggests that Nurse Heenan worked as

an agent of Dr. Susteric.

Furthermore, the evidence offered by Plaintiff does not establish that Nurse Heenan

worked under the close supervision of Dr. Susteric. Plaintiff contends that Nurse Heenan should

be considered an "acceptable medical source" because the clinic where Nurse Heenan and

Dr. Susteric work utilizes an interdisciplinary approach to treatment where MDs supervise the

nurse practitioners. Plaintiff cites as evidence the clinic's website, treatment notes from Tressa

Ernst, LCSW, and Dr. Susteric's signature on the opinion. First, the clinic's website mentions

only generally the use of an "interdisciplinary" or "integrated" healthcare team. The website does

not provide any specific information about how closely the MDs work with the nurse

practitioners or otherwise describe the treatment in any detail, let alone mention individual

treatment providers. Second, the treatment notes from Ms. Ernst merely state that Plaintiff was

referred to the social worker by the "PCP" or primary care physician. The notes do not mention

Dr. Susteric or Nurse Heenan by name, nor do they provide any insight to the care Plaintiff

received or the supervisory relationship of the relevant parties. Third, Plaintiff argues that the

presence of Dr. Susteric's signature on the physical capacity statement demonstrates that she was

involved with the patient. A single signature, however, does not establish that that Nurse Heenan

worked under Dr. Susteric's close supervision. *See O'Connor v. Colvin*, 2013 WL 4432138

(Aug. 14, 2013) (finding one signature from a physician insufficient to prove that the physician

closely supervised a nurse practitioner's treatment of a patient); *Ramirez v. Astrue*, 803

F. Supp. 2d 1075, 1082 (C.D. Cal. 2011) (finding that a physician's signature on a report from an

"other" medical source did not establish that the physician closely supervised the "other" source).

The medical records fail to offer proof that the nurse practitioner acted as an agent of an "accepted medical source." Consequently, the Court does not consider Nurse Heenan's opinion an "accepted medical source" and analyzes her opinion as an "other" medical source that may be rejected for germane reasons.

### b.  Reasons to Discount the Opinion

Nurse Heenan opined that Plaintiff is incapable of low stress work, would require unscheduled breaks every thirty minutes lasting up to 15 minutes, and would be absent from a job for more than 2 days per month. AR 935. The ALJ provided several reasons for according partial weight to Nurse Heenan's opinion: (1) the severity of the symptoms described in the opinion was not supported by the treatment records, particularly given the lack of compliance with treatment; (2) the assessment did not provide clear bases for the limitations; (3) the opinion contained no specific findings to support the limitations; (4) no basis was provided for breaks that last up to half the workday; (5) the treatment records did not reflect any manipulative difficulties other than overhead reaching; and (6) the evidence does not support the opinion that Plaintiff cannot perform simple, low stress work.

The ALJ's first basis is not a permissibly germane reason to discount the opinion of Nurse Heenan. The ALJ stated that the records do not support the severity of the limitations "*particularly* given the lack of compliance at times." AR 28 (emphasis added). This statement suggests that Plaintiff's noncompliance with treatment impacted the ALJ's review of the symptoms. As previously stated, the Court finds that the ALJ did not fully address Plaintiff's argument for justifiable non-compliance, therefore this reason may not be used to discredit Nurse Heenan's opinion.

The ALJ's next three reasons all concern Nurse Heenan's failure to provide sufficient support for the opined limitations. The ALJ found that the opinion did not provide clear bases for the limitations, specific findings to support the limitations, or, specifically, any basis for breaks that last up to half the workday. The Ninth Circuit has held that an ALJ may "permissibly reject[] . . . check-off reports that [do] not contain any explanation of the bases of their conclusions." *Molina*, 674 F.3d at 1111 (quoting *Crane v. Shalala*, 76 F.3d 251, 253 (9th Cir. 1996)). The ALJ, however, should not reject an opinion for being presented in a check-box format when the opinion is supported by the treatment notes. *See Esparza v. Colvin*, 631 F. App'x 460, 462 (9th Cir. 2015) (citing *Garrison*, 759 F.3d at 1014 n.17). Nurse Heenan's opinion was provided on a check-box form. *See* AR 932-35. This form included questions prompting Nurse Heenan to explain her conclusions regarding Plaintiff's limitations. *Id.* Despite these prompts, Nurse Heenan failed to provide bases for the opined limitations or describe any specific medical findings. *See* AR 933-34. Moreover, the treatment records fail to offer any guidance on the bases for the limitations. According to the medical records, Plaintiff only visited with Nurse Heenan four times before the creation of the physical capacity statement. *See* AR 746, 756, 759, 894. Plaintiff was treated for restless leg syndrome, seizures, degenerative joint disease in her knees, bipolar disorder, and PTSD. AR 935. Although Plaintiff received medications and physical therapy for her ailments, Nurse Heenan did not mention any need for frequent breaks in the treatment records. The Court will not speculate about the reasons for these limitations when none are provided. These reasons are sufficiently specific and germane bases to discount Nurse Heenan's opinion.

The ALJ also determined that the treatment records did not reflect any manipulative difficulties other than overhead reaching. Nurse Heenan opined that Plaintiff is limited to

frequently grasping, repetitive grasping, gross manipulation, and repetitive pushing and pulling. AR 934. Plaintiff contends that the ALJ failed to consider Plaintiff's 2015 hand injury, which required stiches on one finger. Although Plaintiff requested a referral to a hand specialist after this injury, the records do not show that Plaintiff received a referral or sought other treatments. AR 759. Furthermore, treatment notes from more recent visits with Nurse Heenan appear to state that Plaintiff had full grip strength. AR 895. Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch*, 400 F.3d at 679. This basis is sufficiently specific and germane.

Finally, the ALJ determined that treatment records did not support the opinion that Plaintiff would have difficulty with simple, low stress work. The ALJ did not wholly reject Nurse Heenan's opinion and agreed that Plaintiff has some difficulties with concentration and stress. These limitations are reflected in the RFC by restricting Plaintiff to low stress work with occasional contact with the public. To the extent that the RFC includes the limitations in Nurse Heenan's opinion, the ALJ has not rejected the opinion and no conflict exists. *See Turner*, 613 F.3d at 1222-23 (finding that the ALJ did not need to provide reasons for rejecting an opinion when the ALJ incorporated the opinion's conclusions). In her opinion, Nurse Heenan did not list any reasons why Plaintiff could not perform low stress work or simple tasks. As previously mentioned, the ALJ may reject findings on check-box forms when the conclusions are not explained. *See Molina*, 674 F.3d at 1111. This reason is germane.

As discussed above, the ALJ's first basis was not a permissibly germane reason to discount the opinion testimony of Nurse Heenan. Nevertheless, any error with this reason is harmless because the remaining reasons provided by the ALJ are sufficiently specific and germane reasons to limit the weight accorded to Nurse Heenan's opinion.

## 2. Nurse Culver and Dr. Marie

Brinn Culver, PMHNP ("Nurse Culver"), a treating nurse practitioner, completed a Mental Residual Capacity Statement that was cosigned by Dr. Susan Marie, PMHNP, PhD ("Dr. Marie"). AR 802. Nurse Culver and Dr. Marie opined that Plaintiff is moderately limited in work-like procedures and the ability to complete a normal workweek without interruption from psychological symptoms. The assessment also provided that Plaintiff had moderately severe limitations in the ability to maintain concentration, work and interact with others, and respond to unexpected changes. Finally, this opinion included the limitation that work related stressors would likely increase Plaintiff's level of impairment. The ALJ accorded partial weight to this assessment.

Plaintiff contends that both Nurse Culver and Dr. Marie are treating mental health providers but concedes that the opinion of Dr. Portnoff controverted these opinions. Plaintiff therefore asserts that the ALJ must provide specific and legitimate reasons to reject the opinions of Nurse Culver and Dr. Marie. Defendant argues that there is no evidence that Dr. Marie treated Plaintiff, and Nurse Culver's opinion constitutes an "other" medical source. Thus, Defendant argues, the ALJ may reject the opinion for reasons germane to the case.

The Court again applies the analysis from *Gomez* to determine whether the opinion signed by Nurse Culver and Dr. Marie constitutes an "acceptable medical source." Nurse Culver filled out the mental health assessment and Dr. Marie cosigned the assessment on January 28, 2016. AR 802. Nurse Culver treated Plaintiff several times in 2015 and 2016, *see, e.g.*, AR 791, 794, 886, 904, 938, and prescribed Plaintiff medications for her mental impairments. *See, e.g.*, AR 789, 898, 939. The treatment records do not indicate that Dr. Marie was present for these visits or approved these prescriptions. Furthermore, the record does not show any visits where Dr. Marie personally evaluated or treated Plaintiff. Dr. Marie's only

connection to Plaintiff in the record is Dr. Marie's signature on the Mental Health Assessment. AR 802. The record does not support that Nurse Culver worked closely under Dr. Marie's supervision or conferred with Dr. Marie such that Nurse Culver's opinion constitutes an "accepted medical source." The Court thus analyzes Nurse Culver's opinion as an "other" medical source that may be rejected for reasons germane to the case.

The ALJ gave Nurse Culver's opinion partial weight, providing several reasons for this determination. The ALJ accorded this opinion limited weight because: (1) the severity of the symptoms described were not supported by the record, particularly given Plaintiff's noncompliance with treatment; (2) care was generally routine and conservative; (3) there were no clear bases provided for the limitations in the opinion; (4) the check box form did not contain any specific findings to support the limitations; and (5) the record does not support the opinion that Plaintiff is unable to engage in simple routine, low stress work with limited interactions. AR 28.

First, the ALJ determined that the severity of symptoms included in the assessment was "not supported by the treatment record, *particularly* given the lack of compliance at times." AR 28 (emphasis added). As previously noted, the Court finds that the ALJ did not address adequately Plaintiff's proffered reasons for non-compliance. This reason is not a permissibly germane reason to discredit Nurse Culver's opinion.

The ALJ next found that the treatment Plaintiff received was "generally routine and conservative." The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). Plaintiff argues that her treatment should not be considered conservative because she was prescribed powerful anti-psychotic and depression medications at varying levels. Additionally, Plaintiff was encouraged

to visit with a social worker and attend group therapy. The Court has found that the "mere fact that a claimant has not been admitted to a hospital on an inpatient basis" does not mean that a claimant received conservative treatment. *Tammy L. O. v. Comm'r Soc. Sec. Admin.*, 2018 WL 3090196, at *13 (D. Or. June 20, 2018). Other district courts in the Ninth Circuit have recognized that treatment similar to what Plaintiff required—namely prescription antidepressants, prescription antipsychotics, and therapy—is not properly characterized as conservative treatment. *See, e.g.*, *Mason v. Colvin*, 2013 WL 528932 (E.D. Cal. Sept. 18, 2013) (finding antidepressants and antipsychotic medications not conservative treatment); *Odisian v. Colvin*, 2013 WL 5272996, at *8 (C.D. Cal. Sept. 18, 2013) (finding treatment with psychiatric medications and sessions with psychologist not conservative treatment); *Gia M.P. v. Comm'r Soc. Sec. Admin.*, 2018 WL 4031606 (D. Or. Aug. 23, 2018) (finding that treatment consisting of therapy and prescription psychiatric medications is not conservative treatment); *Choat v. Berryhill*, 2018 WL 2048332, at *5 (D. Or. Apr. 30, 2018) (finding lack of hospitalization and the use of psychiatric medications is not conservative treatment). The Court finds that Plaintiff's medical record is not one of "conservative treatment." Accordingly, conservative treatment is not a germane reason to discount Nurse Culver's opinion.

The ALJ's final three reasons evaluate the support provided, both in the check box form and in the treatment notes, for the limitations described in Nurse Culver's opinion. The ALJ found that there were no clear bases provided for the limitations and, furthermore, there were no specific findings on the check box form to support the limitations.[3] The ALJ next determined that Nurse Culver's opinion that Plaintiff is unable to engage in simple, routine, low stress work with

---

[3] For example, Nurse Culver opined that Plaintiff would have moderately severe difficulty maintaining concentration and attention for up to two hours. The treatment records, however, show that Nurse Culver described Plaintiff's thought process as "linear" and "organized." AR 788, 791, 794, 796.

limited interactions is not supported by the treatment records. These reasons are identical to those provided by the ALJ in discounting Nurse Heenan's opinion. Nurse Culver's opinion suffers from the same deficiencies as Nurse Heenan's. For the same reasons the Court finds these three reasons germane to discounting Nurse Heenan's opinion, they are germane to discounting Nurse Culver's opinion.

As discussed above, the ALJ's first and second bases for according Nurse Culver's opinion partial weight were not permissibly germane reasons. Any errors with these reasons are harmless, however, because the ALJ's final three reasons are sufficiently specific and germane bases to limit the weight accorded to Nurse Heenan's opinion. The ALJ did not err.

## CONCLUSION

The Commissioner's decision that Plaintiff was not disabled in AFFIRMED.

**IT IS SO ORDERED**.

DATED this 3rd day of December, 2018.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge